## WILSON *v.* REUTER, *et al.*

1. **Mechanics' lien:** JUDGMENT: SALE UNDER.    The special execution provided by section 1864 of the Revision, for the enforcement of a mechanics' lien, must be in conformity with the judgment establishing the lien.

2. ——— It was accordingly *held*, where a judgment was rendered establishing a mechanics' lien against the building alone, instead of against both the building and lot on which it was situated, that a special execution against both was not authorized, and that a sale made thereunder was void.

3 **Contract:** CONDITION AGAINST ASSIGNMENT: VENDOR AND VENDEE. Where a contract for the sale of real estate stipulated that no assignment of the premises should be valid unless the same should be indorsed on the contract and countersigned by the vendor, it was *held*, that this provision being for the benefit of the vendor, he alone could insist upon its enforcement, or object that an assignment was void because it was not complied with.

4. **Stamps:** MORTGAGE: EFFECT OF POST-STAMPING: SUBSEQUENT PURCHASERS.    A mortgage insufficiently stamped is not absolutely void as between the parties thereto and subsequent purchasers having actual notice of its existence, and as to them it will be entitled to preference if afterward properly stamped under authority of the revenue collector within the time allowed by law.    The case of *McBride* v. *Doty*, 23 Iowa, 122, distinguished from the present one.

*Appeal from General Term, Third District (Pottawottamie county).*

## FRIDAY, JULY 22.

MORTGAGE FORECLOSURE.—Reuter made the mortgage May 2, 1867, to plaintiff, Wilson, but it was not properly stamped.    In this condition it was filed for record on the 6th of the same month.    On the 25th of April, 1868, upon application to the proper collector, the mortgage was stamped, and the stamp canceled as allowed by law; this fact being entered of record, and the mortgage refiled and again recorded.

Wilson v. Reuter.

What title Reuter had to the lots in controversy at the time of the mortgage does not appear. He was, however, in possession of the same, and engaged in building a house thereon, the same being afterward known as the " Sherman House." On the 8th of May, 1867, he took a written contract to convey these lots, from one Blair, upon the conditions therein mentioned. This agreement contained this clause : "And it is further stipulated that no assignment of the premises shall be valid unless the same shall be endorsed hereon and countersigned by the said Blair or his assigns." This agreement he assigned to Rogers & Eaton, June 18, 1867 ; they to Sherman, October 30, 1867 ; and he to McIntosh, April 28, 1868 ; and he to Harker, May 11, 1868. These parties all had actual knowledge of plaintiff's mortgage.

Certain parties, for lumber furnished for the house, instituted their action to enforce a mechanic's lien.

Whether by their petition they sought a lien upon the house and lots or the house alone does not appear ; but the judgment recognized a lien perfected upon the " Sherman House ;" foreclosed the equity of redemption of defendants, including the present plaintiff; ordered it to be sold, and that a special execution issue accordingly.

That was November 30, 1867. Under this, a special execution issued December 3, 1867, commanding a sale of the lots ; and thereunder said lots were sold to Sherman (above named), and a deed made to him December 31, 1867. At the time he transferred the Blair contract he executed to McIntosh a quitclaim deed, and McIntosh, in like manner, quitclaimed to Harker, June 16, 1868.

November 26, 1869, plaintiff had judgment of foreclosure against Reuter and certain lienholders for the amount of the note first due and secured by his mortgage, and the suit was continued as to the other defendants, including those now prosecuting this appeal. This was

consolidated afterward with this action to foreclose for the second and remaining note. Upon the final hearing the court directed the sale of the property, including the house as well as the lots, and that the proceeds be applied, *first*, to the payment of the mechanics' lien, to be paid to the person entitled to it by assignment or otherwise ; *second*, to plaintiff's judgment of November 26, 1869 ; and *third*, to the last note. From this judgment Sherman and Harker appealed to the general term, and from a judgment of affirmance there Harker alone appeals to this court.

*W. F. Sapp*, *P. D. Mickle* and *Montgomery, Reed & James* for the appellant.

*Baldwin & Wright* and *M. Holbrook* for the appellee.

WRIGHT, J.—Several questions are made in this case, but they may be considered under two general heads.

I. As to the effect of the judgment and sale under the mechanics' lien upon the rights of these parties.

1. MECHANICS' LIEN : judgment : sale under. There is no doubt but that the material men might have had their lien attach to the lots as well as to the house. It seems, however, that for some cause not disclosed they took it against or had it attach to the building alone. This they may have deemed the better course, in view of Reuter's title and plaintiff's mortgage, for the law attaches such a lien to the house in preference to a prior mortgage on the lots. Rev. § 1855.

This then, was the judgment under which appellant claims, and the law says that the special execution to be issued thereon shall be in conformity with said judgment. Rev. § 1864. When, therefore, a special execution issued commanding a sale of the lots, there was a departure from the judgment, and the sale thereunder would

Wilson v. Reuter.

certainly not date the purchaser's title thereunder as to the lots back to that of the lien. Nor would it do to say, that, under such a sale, the purchaser would at least be entitled to the house, as against plaintiff. The judgment in the mechanics' lien case, which it is claimed binds him, related to the house, not to the lots. There was no warrant for the special execution, nor for the sale, in the judgment. He is estopped by the judgment, so far as it extends, but not from asserting rights not adjudicated therein. And when the court preserved the priority of the mechanics' lien on the lots as well as the house (for this is the effect of the judgment from which defendant now appeals), he certainly has no ground of complaint. *Cooley* v. *Brayton*, 16 Iowa, 10, is not this case. There the defect in the writ was "a mere misprision of the clerk" in failing to fill a blank in an execution, and the action was for the recovery of the real property sold under the writ. Here the writ was not warranted by the judgment, and the contest is between conflicting liens.

II. How far were defendants affected by the plaintiff's mortgage? And here, *first*, it is contended that by the terms of the Blair contract the mortgage was not valid, because the vendor's assent thereto was not indorsed on the contract and countersigned by him. To this it is answered : 1. That it was made before the contract with Blair, when Reuter was in possession, engaged in building the house, and what other title he had is not disclosed. 2. It may well be doubted whether a mortgage is an assignment within the meaning of the contract. 3. But if so, then the stipulation was for Blair's benefit, and he alone can insist upon its enforcement. These defendants do not succeed to his rights in this respect.

3. CONTRACT : condition against assignment : vendor and vendee.

*Second.* The claimed defect in the mortgage for want of a stamp, and the effect thereof upon appellant's rights.

Wilson v. Reuter.

4. STAMPS: mortgage: effect of post-stamping: subsequent purchasers.

That every purchaser under the Blair contract knew of the existence of this mortgage, as also that it was recorded, the amount thereby secured, and that they bought upon hypothesis that it was at least a possible prior lien, which would have to be met, is very well established. It was talked over, and their purchases were made with reference to it. In addition to this the first action to foreclose was commenced October 9, 1867, being before appellant acquired an interest in the property. Then, too, the mortgage was properly stamped and recorded before he (Harker) purchased. He then had both actual and constructive notice.

We hold that defendants acquired no right to this property "in good faith," within the meaning of the revenue act. Amendments to act of June 30, 1864, 148, 149, Laws of July 13, 1866. As against plaintiff's mortgage, and as to this appellant, there is of course no room for controversy, for he bought (as did his grantor McIntosh) after the mortgage was properly stamped and filed for record.

In the case of *McBride* v. *Doty*, 23 Iowa, 122, relied upon by the appellant, the parties claiming adversely to the mortgage had no actual knowledge of its existence, nor were any of their rights relinquished subsequent to the restamping. In this case, upon the assumption that plaintiff could under the law obtain the proper officer to duly stamp the instrument, it was good as between the parties to it. And it was equally so as between plaintiff and those having actual knowledge of its existence, as did these defendants. If they purchased with this knowledge, resting upon impressions, as some of them doubtless did, that they were not affected thereby, because of the defective stamping, they also knew, as well, that if the plaintiff could bring himself within the law, he could have the

defect cured, and that thereafter the mortgage could "be used in all the courts and places in the same manner and with like effect as if it had been originally stamped" (amendments above). Any other view would require us to give a different construction to this law from what applied to other cases of purchasers with notice of an outstanding, good faith instrument, improperly executed or recorded. And for the claimed distinction we know of no good reason. The case of *Berry* v. *Boyd*, 28 Iowa, 409, does not bear upon this. There the question was whether the stamp upon a note, good for a first mortgage, would be equally as efficient for a second mortgage upon other property to secure the same, not executed until long after. It was held that it would not. There was no question of actual notice in the case. See in this connection *McAfferty* v. *Hale*, 24 Iowa, 355. The contract between plaintiff and Reuter was not void

Affirmed.